# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JEFFERSON'S FRANCHISE MANAGEMENT, INC., | ) ) ) | CIVIL ACTION NO. |
| Plaintiff, | ) ) | _____ |
| versus | ) ) | |
| MELLIGAN, LLC; STEVEN FLEMING; FELICIA MITCHELL; and ROHIT PATEL, | ) ) ) ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT

COMES NOW Plaintiff Jefferson's Franchise Management, Inc. ("JFM") and states its Complaint as follows:

## NATURE OF THIS ACTION

This action is filed by JFM to obtain preliminary and permanent injunctive relief preventing its terminated franchisees from continuing to operate JFM franchised "Jefferson's" restaurants in Decatur and Madison, Alabama, and requiring the franchisees to return all proprietary materials to JFM and further comply with all post-termination obligations found in the franchise agreements, including, but not limited to, a complete de-identification of the restaurants as "Jefferson's" franchises.

{BH255616.1}                                1

## THE PARTIES

1.  JFM is an Alabama corporation with its principal place of business in Murfreesboro, Tennessee.

2.  The Defendant, Melligan, LLC ("Melligan") is an Alabama limited liability company with its principal place of business in Madison or Morgan County, Alabama.

3.  The Defendants, Steven Daniel Fleming ("Fleming") and Felicia Mitchell ("Mitchell") are, upon information and belief, residents of DeKalb County, Alabama. The Defendant, Rohit Patel ("Patel") is, upon information and belief, a resident of Etowah County, Alabama.

4.  Upon information and belief, the membership interests of Melligan are owned by Fleming, Mitchell, and Patel.

## JURISDICTION AND VENUE

5.  This Court has original jurisdiction over this action based upon 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121 of the Lanham Act which provides in part, "The district … courts of the United States shall have original jurisdiction … of all actions arising under [the Lanham Act], without regard to amount in controversy or to diversity or lack of diversity of the citizenship of the parties."

6.  Venue is proper in this judicial district and division under 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

7. JFM is in the business of franchising restaurants that feature a selection of specialty style foods and beverages with prompt and courteous service in a sports themed atmosphere. The original "Jefferson's" restaurant opened in Jacksonville, Alabama, in 1991.

8. JFM franchised "Jefferson's" restaurants are currently located in the following Alabama cities: Albertville, Decatur, Gadsden, Fort Payne, Hoover, Jacksonville, Madison, Opelika, Oxford, and Scottsboro. JFM also has restaurants in Cartersville, Georgia; Rome, Georgia; Summerville, Georgia; Belleville, Illinois; Mascoutah, Illinois; Lawrence, Kansas; Olathe, Kansas; Brentwood, Tennessee; Chattanooga, Tennessee; and Murfreesboro, Tennessee. Sixteen of these restaurants are franchised restaurants and four are owned by Edawon, Inc., which is a company affiliated with JFM.

9. JFM is the owner of United States Trademark Registration No. 3,730,713 for the service mark "Jefferson's" for, among other things, bar and restaurant services (hereinafter the "Jefferson's Mark"). A true and correct copy of the corresponding Certificate of Registration is attached hereto as Exhibit 1.

10. Since the inception of their use, the Jefferson's Mark has been used by JFM and its licensed franchises in connection with providing restaurant and bar services to the general public.

11. The Jefferson's Mark, developed in Alabama and other states, represents valuable, substantial, and exclusive goodwill and reputation inuring to JFM's benefit. JFM has always exercised great care, skill, and diligence in maintaining uniform standards of high quality for the restaurants bearing its name. The reputation associated with and the goodwill developed in the JFM trademarks in Alabama and other states is of high value to JFM.

12. The Jefferson's Mark remains active, valid, and enforceable.

## THE FRANCHISE AGREEMENTS

13. On or about June 26, 2012, JFM entered into a franchise agreement with Fleming that permitted Fleming to operate a "Jefferson's" restaurant franchise in Madison, Alabama. A true and correct copy of this agreement is attached as Exhibit 2.

14. On or about August 12, 2013, JFM entered into a franchise agreement with Melligan that permitted Melligan to operate a "Jefferson's" restaurant franchise at 102 2nd Avenue Southeast, Decatur, Alabama 35601. A true and correct copy of this agreement is attached as Exhibit 3.

15. The franchise agreements with Fleming and Melligan contained substantially similar provisions and, thus, may be referred to herein collectively as

the "Franchise Agreements" or singularly as the "Madison Franchise Agreement" or the "Decatur Franchise Agreement."[1]

16. JFM may be referred to herein as "Franchisor." Fleming, Mitchell, Patel, and Melligan are collectively referred to herein as "Franchisees." The "Jefferson's" restaurants franchised to the Franchisees are referred to collectively as the "Franchised Restaurants" or singularly as the "Decatur Franchised Restaurant" or the "Madison Franchised Restaurant."

17. The Franchise Agreements specifically and non-exclusively licensed the Jefferson's Mark to the Franchisees for so long as the Franchise Agreements remained in effect.

18. Section 15 of the Franchise Agreements provides the grounds for the Franchisor's termination of the Franchise Agreements. Pursuant to section 15(i), the Franchisor may terminate the Franchise Agreements when the Franchisee "suffers violation of any law, ordinance, rule or regulation of a governmental agency in connection with the operation of the Jefferson's franchised restaurant, and permits the same to go uncorrected after notification thereof, …"

19. Pursuant to section 15(l) of the Franchise Agreements, the Franchisor

---

[1] The Decatur Franchise Agreement contains an additional provision which provides that the Franchisee shall appoint an Operations Manager suitable to the Franchisor. In addition, the Decatur Franchise Agreement contains personal guaranties of Fleming, Mitchell and Patel that they will agree to be individually bound by all the terms and conditions of the Decatur Franchise Agreement. *See* Exh. 2, section 1.2 (Operations Manager provision) and p. 35 (Guaranties).

may terminate the Franchise Agreements if the Franchisee "[e]ngages in any conduct or practice that is reasonably likely to adversely affect other franchises, the Franchise System, the Names and Marks, the goodwill associated therewith …"

20. Section 15(n) provides that the Franchisor may terminate the Franchise Agreements if the Franchisee fails to comply with any provision of the Franchise Agreement, and the Franchisee does not correct such failure within 30 days written notice.

21. Section 16 of the Franchise Agreements provides for the Franchisees' rights and obligations upon termination. Section 16.2 requires, within 24 hours of termination, that the Franchisee return the Franchisor's Confidential Operations Manual and any other manuals provided by the Franchisor and also that the Franchisee return all proprietary material of the Franchisor.

22. Section 16.3 requires that the Franchisee "will strictly observe the provision of Section 13, Paragraph 13.1 hereof and that he/she/it will return to Franchisor all signs, catalogues, advertising materials, forms, invoices and other materials containing the Name and Marks or otherwise relating to the Jefferson's franchised restaurant …" Section 16.3 further requires the Franchisee to notify the telephone company and all listing agencies of the termination and authorize the transfer of such listings to the Franchisor.

23. Section 16.4 requires that the Franchisee de-identify the restaurant

premises including the removal of all signs, Trademarks, or other proprietary verbiage from the exterior and interior of the building.

24. Section 17.10 of the Franchise Agreements contains an arbitration provision which provides in part:

> All disputes and claims relating to any provision of this Franchise Agreement (other than as set forth in Section 17, Paragraph 17.8 above, Franchisee's use of Names and Marks or the obligations of Franchisee upon termination or expiration of the franchise, and assignment of the Franchise and ownership of Franchisee) any specification, standard, operating procedure, or rule or any other obligation of Franchisee prescribed by franchisor or any obligation of Franchisor, or the breach thereof (including without limitation, any claim that this Agreement, any provision hereof, any specification, standard, operating procedure or rule or any other obligation of Franchisee or Franchisor is illegal or otherwise unenforceable or voidable under any law, ordinance, or ruling) shall be settled by arbitration in Gadsden, Alabama … Arbitration shall be conducted in accordance with the United States Arbitration Act (9 U.S.C. Section 1 *et seq.*), if applicable, and the Rules of the American Arbitration Association…

25. Section 17.8 of the Franchise Agreements provides for limited temporary and permanent injunctive relief as requested by the Franchisor. That section provides in part:

> Franchisor shall be entitled, without bond, to the entry of temporary and permanent injunctions and orders of specific performance enforcing the provisions of this Agreement relating to Franchisee's use of the Names and Marks, the obligations of Franchisee upon termination or expiration of the franchise, and assignment of the

> Franchise and ownership of Franchisee. If Franchisor secures any such injunction or order of specific performance, Franchisee agrees to pay to Franchisor an amount equal to the aggregate of its costs of obtaining such relief, including, without limitations, reasonable attorneys' fees, costs of investigation and proof of facts, court costs, other litigation expenses, and travel and living expenses, and any damages incurred by Franchisor as result of the breach of any such provision.

## ASSIGNMENT OF THE MADISON FRANCHISE AGREEMENT

26. On or about September 19, 2014, Fleming purported to assign his right, title, and interest in the Franchise Agreements and in Melligan to Mitchell. A copy of the Assignment is attached as Exhibit 4. However, upon information and belief, Fleming continues to be involved in or otherwise participate in the management of the Franchised Restaurants.

## JFM TERMINATES THE FRANCHISE AGREEMENTS

27. By letter dated May 23, 2014, JFM informed Melligan in writing that it was in breach of section 1.2 of the Decatur Franchise Agreement because, among other things, it had failed to appoint an Operations Manager approved by the Franchisor. Melligan was provided 30 days to cure this breach.

28. By letters dated September 9, 2014, JFM provided an additional Notice to Cure letter to the Franchisees. JFM informed the Franchisees in writing that they had failed to have a trained and approved Operations Manager and to maintain a trained staff at the restaurants in violation of section 1.2 of the Decatur

Franchise Agreement and section 7(e) of the Decatur and Madison Franchise Agreements. Other listed breaches in the Notice to Cure letters included, selling items that were not included in gross sales or reported to the Franchisor, not paying employees for hours worked, and allowing an underaged employeed to serve alcoholic beverages. The September 9, 2014, letters are attached as Exhibits 5 and 6.

29. The breaches made the subject of the letters of May 23, 2014 and September 9, 2014, were never cured. Melligan has never maintained a consistent Operations Manager at the Decatur Franchised Restaurant. In addition, the Franchised Restaurants have failed to maintain a trained staff and to pay staff on time and for the hours worked.

30. By letters dated March 17 and 18, 2015, JFM terminated the Franchise Agreements. The March 17 and 18, 2015 letters are attached as Exhibits 7 and 8 respectively (collectively the "Termination Letters"). The Termination Letters specifically and expressly notified the Franchisees that the Franchise Agreements would be terminated for the failure to cure the defaults listed in the letters of September 9, 2014.

31. Further, the Termination Letters advised the Franchisees of their post-termination obligations set forth in Section 16 of the Franchise Agreements, including the obligation to return all manuals and other proprietary property,

remove all signs on the exterior and interior of the restaurant premises and completely de-identify the restaurant premises. The Termination Letters were also provide to counsel for the Franchisees.

32. On March 19, 2015, in an effort to thwart the termination of the Franchise Agreements, the Franchisees filed an "Application for a Temporary Restraining Order and Motion for Preliminary Injunction on Verified Complaint" in the Circuit Court for DeKalb County, Alabama ("State Court Motion"), an improper and inconvenient forum given that the Franchised Restaurants are located in Madison and Morgan counties.

33. After filing of the State Court Motion, counsel for both the Franchisor and Franchisees verbally agreed to suspend the enforcement of remedies in connection with the termination of the Franchise Agreements and any hearing on the State Court Motion because it appeared that the Franchisees had a willing purchaser for the Franchised Restaurants. The verbal agreement made by the Franchisor, however, was contingent on the Franchisee obtaining a letter of intent from the purchaser of the Franchised Restaurants.

34. On March 26, 2015, counsel for the Franchisees emailed two purported letters of intent which are attached as Exhibit 9. The purported letters of intent, however, were insufficient to indicate the terms of a purchase of the Franchised Restaurants. At best, the letters of intent merely indicated that there

was some potential for the sale of the Franchised Restaurants at some point in the future on some unknown and uncertain terms.

35. On and about April 17, 2015, JFM learned that the potential purchasers no longer had any interest in purchasing the Franchised Restaurants from the Franchisees. In addition, JFM learned that the Franchisees had failed to pay sales and use taxes to Madison County, Morgan County, and the City of Decatur.

36. Accordingly, by letter dated April 20, 2015, a copy of which is attached as Exhibit 10, the Franchisor advised the Franchisees that it was withdrawing the verbal agreement to suspend the enforcement of remedies in connection with the termination of the Franchise Agreements. The letter confirmed the termination of the Franchise Agreements. The letter also provided notice of additional breaches of the Franchise Agreements which supported immediate termination, including, the failure to remit sales and use taxes, failure to abide by Health Department regulations, failure to pay wages, failure to pay vendors, and closure of the Decatur Franchised Restaurant on two occasions in April 2015. A copy of this letter was emailed to counsel for Franchisees on April 20, 2015.

37. Since April 20, 2015, the Franchisees have made no effort to comply with the post-termination provisions in the Franchise Agreements. The

Franchisees are continuing to operate as Franchised Restaurants and are continuing to use the Jefferson's Mark. The Franchisees have not returned the Confidential Operations Manual and other materials that are proprietary to JFM.

38. The continued use by the Franchisor of the Jefferson's Mark without Franchisor's consent has irreparably damaged JFM, and, unless enjoined by this Court, will continue to irreparably damage the value and valuable goodwill associated with the Jefferson's Mark.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT AND SPECIFIC PERFORMANCE

39. JFM incorporates by reference all the preceding paragraphs as if set forth in full herein.

40. The Defendants' acts as described above constitute breach of the Franchise Agreements.

41. As a proximate cause of the Defendants' breaches of the Franchise Agreements, JFM has been damaged as described above.

WHEREFORE, premises considered, JFM demands judgment against the Franchisees, including preliminary and permanent injunctive relief and an award of attorneys' fees, costs, and litigation expenses as set forth in section 17.8 of the Franchise Agreements. In addition, JFM requests an order by this Court requiring specific performance of the Franchisees' post-termination obligations set forth in Section 16 of the Franchise Agreements.

## SECOND CAUSE OF ACTION
## DECLARATORY JUDGMENT

42. JFM incorporates by reference all the preceding paragraphs as if set forth in full herein.

43. JFM is entitled to a declaratory judgment that the Franchise Agreements were properly terminated as of April 20, 2015, the date the Franchisees received JFM's letter withdrawing the suspension of the termination of the Franchise Agreements.

WHEREFORE, premises considered, JFM demands judgment against the Franchisees, including preliminary and permanent injunctive relief and an award of attorneys' fees, costs, and litigation expenses as set forth in section 17.8 of the Franchise Agreements.  In addition, JFM requests an order by this Court requiring specific performance of the Franchisees' post-termination obligations set forth in Section 16 of the Franchise Agreements.

## THIRD CAUSE OF ACTION
## FEDERAL TRADEMARK INFRINGEMENT

44. JFM incorporates by reference all the preceding paragraphs as if set forth in full herein.

45. Franchisees' unauthorized acts as described above constitute intentional infringement of the Jefferson's Mark, a federally registered Trademark in violation of 15 U.S.C. § 1114.

46. As a proximate cause of the Franchisees' violation of 15 U.S.C. § 1114, JFM has caused to be damaged.

WHEREFORE, premises considered, JFM demands judgment against the Franchisees, including preliminary and permanent injunctive relief and an award of attorneys' fees, costs, and litigation expenses as set forth in section 17.8 of the Franchise Agreements. In addition, JFM requests an order by this Court requiring specific performance of the Franchisees' post-termination obligations set forth in Section 16 of the Franchise Agreements.

DATED: May 7th, 2015.

[SIGNATURE ON FOLLOWING PAGE]

Respectfully submitted,


*/s/ Emily Sides Bonds*
Mac B. Greaves (ASB-6830-A60M)
Emily Sides Bonds (ASB-9610-N77E)

**Of Counsel:**
**JONES WALKER LLP**
1819 5th Avenue North, Suite 1100
Birmingham, AL 35203
Telephone  (205) 244-5200
Telecopy  (205) 244-5400
ebonds@joneswalker.com
mgreaves@joneswalker.com


*/s/ Richard C. Duell, III*
Richard C. Duell, III (ASB-1947-L75R)

**Of Counsel:**
**DUELL LAW**
800 Corporate Parkway, St. 100
Birmingham, AL 35242
Telephone  (205) 408-3025
Richard@DuellLaw.com

## VERIFICATION

**STATE OF ALABAMA** )

**COUNTY OF** Rutherford )

Sean McCooey, being first duly sworn, on oath deposes and verifies, that he is Vice President of Jefferson's Franchise Management, Inc., that he has read the allegations contained herein and that such allegations are true and correct to the best of his knowledge.

Sean McCooey
Vice President
Jefferson's Franchise Management, Inc.

Sworn and subscribed before me this 5th day of May 2015.

Notary Public

My Commission Expires: 10.24.2017

*[Notary Seal: DIANA M LAMB, STATE OF TENNESSEE NOTARY PUBLIC, RUTHERFORD COUNTY]*

**Plaintiff requests service by certified mail of the summons and complaint:**

Melligan, LLC
102 2nd Avenue Southeast
Decatur, AL 35601

Felicia Mitchell
P.O. Box 1398
Rainsville, AL 35986

Steven Fleming
2773 Rainbow Avenue
Rainsville, AL 35986

Rohit Patel
1524 Briarcliff Road
Rainbow City, AL 35906